UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| JAMES HAYS, | ) | |
| | ) | |
| Plaintiff, | ) | Jury Demanded |
| | ) | |
| v. | ) | No. _____ |
| | ) | |
| CHATTANOOGA TANK WASH, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

# COMPLAINT

Plaintiff sues Defendant and shows unto the Court as follows:

## I. JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked by Plaintiff pursuant to 28 U.S.C. §1332, as the matter in controversy exceeds the value of $75,000 and there is complete diversity of citizenship among the parties to this matter. Venue is proper with this Court in that the actions giving rise to this matter occurred in Hamilton County, Tennessee.

## II. NATURE OF PROCEEDING

2. This action is brought to secure redress for violation of the Tennessee Public Protection Act, Tenn. Code Ann. §50-1-304. This action seeks equitable relief in the form of back pay, prejudgment interest, reinstatement or front pay in lieu of reinstatement; as well as legal relief in the form of compensatory damages, punitive damages, and attorney fees.

## III. THE PARTIES

3. Plaintiff James Hays is a resident of Walker County, Georgia.

4. Defendant Chattanooga Tank Wash, LLC is a limited liability company organized under the laws of the State of Tennessee. It conducts business in Hamilton County, Tennessee.

5. Upon information and belief, there are two members of Defendant Chattanooga Tank Wash, LLC, and neither LLC member is a resident of the State of Georgia.

## IV. FACTUAL BASES OF PLAINTIFF'S CLAIM

6. Plaintiff was employed by Defendant in various capacities at its facility located at 900 Pineville Road in Chattanooga, Tennessee, from July 22, 2008 until December 17, 2020.

7. Due to the nature of its business operations involving, among other things, the cleaning of commercial pollutants from tanker trucks, Defendant is required to maintain a wastewater discharge (NPDES) permit and comply with the federal Clean Water Act.

8. Defendant's NPDES permit requires compliance with local, state, and federal standards (known as "Pretreatment Standards") that regulate the discharge of pollutants into the City's sewer collection system. The federal NPDES program, which is also enforced by the Tennessee Department of Environment and Conservation (TDEC) and the City of Chattanooga's Wastewater Division, is designed to reduce the level of toxic pollutants discharged by industry into municipal sewer systems, thereby reducing the amount of pollutants released into the environment.

9. State Pretreatment Standards are set forth in Tenn. R&R Chapter 0400-40-14 and are enforced and regulated by the Tennessee Department of Environment and Conversation.

10. The City of Chattanooga has also promulgated similar Pretreatment Standards, which are set forth in the Chattanooga City Code, Chapter 31, Section 31. The City of Chattanooga's Wastewater Department has authority to enforce compliance with these Pretreatment Standards for all entities who have a wastewater discharge permit, including Defendant.

2

11. During the summer and fall of 2020, Plaintiff noticed several Pretreatment Standards violations at the facility. These violations included a leak in the containment wall surrounding the wastewater holding tank and multiple overflows of pollutants – some of which were intentionally caused rather than by accident.

12. Plaintiff brought these matters directly to the attention of Rusty Parker, who was the Terminal Manager. Plaintiff also stressed to Parker that the facility's wastewater holding tanks were insufficient to handle the capacity of wastewater being discharged into the City's sewer system. In essence, because of the facility's insufficient pretreatment equipment, higher levels of pollutants were being discharged into the sewer system. However, Parker did nothing to remedy these violations.

13. Seeing no remedies taken, Plaintiff repeated these serious complaints to Defendant's owners – Jay Brady and Jon Ruiter – in October 2020. Plaintiff also complained that Parker was knowingly not complying with Pretreatment Standards by instructing employees to discharge pollutants directly into the parking lot. In response to these serious complaints, Defendant's owners indicated that they did not want to hear any further details of the company's non-compliance with Pretreatment Standards.

14. Thereafter, Plaintiff sent whistleblowing emails on November 10, 2020 and again on December 3, 2020 to Rick Tate, Pretreatment Supervisor for the City of Chattanooga's Wastewater Department. In these emails, Plaintiff reported that the facility had experienced several pollutant spills, a leak in the containment wall surrounding the wastewater holding tank, excessive discharge above permit limits, intentional discharge of pollutants into the parking lot, and long-time failure to monitor the flow levels of pollutants. Plaintiff also included photographs and short video clips to support his complaints.

15. Plaintiff's complaints involved serious violations of the federal Clean Water Act, as well as state and municipal regulations governing required notices for intentional or accidental discharges of pollutants, bypasses that would cause interference to the City's wastewater treatment processes, and the consistent monitoring and recording of pollutant discharge levels. *See, e.g.,* 33 U.S.C. §1318(a); TDEC Regs. 0400-40-14.05(1)(a); 0400-40-14-.12(6); 0400-40-14-.12(16); 0400-40-14-.17; and Chapter 13 of City Code of Chattanooga Secs. 31-51(b); 31-53(h)(6); 31-53(h)(8); 31-53(h)(13); 31-55.

16. Even if the matters upon which Plaintiff complained did not equate to actual violations of law, Plaintiff had reasonable cause to believe that Defendant was violating the law, and he reported these matters to the City's Pretreatment Supervisor in good faith.

17. As a result of Plaintiff's whistleblowing, the facility experienced increased inspection visits by City wastewater inspectors. This increase of inspections angered and frustrated Parker to the point that he stated aloud in an angry tone that "the City of Chattanooga has us on their radar."

18. On November 18, 2020, Defendant was cited by the City for Pretreatment Standards violations, including the containment wall surrounding the wastewater holding tank and the improper monitoring of pollutant levels.

19. On December 17, 2020, Parker intensely questioned Plaintiff about his whistleblowing. Parker repeatedly asked Plaintiff, "What do you know about sending pictures to the City of Chattanooga?" After repeatedly grilling Plaintiff of his knowledge about an internal whistleblower, Parker admitted that the City inspector had revealed Plaintiff as the whistleblower. Parker then told Plaintiff, "We're going to have to let you go. Violation of company policy. Taking pictures and sending them to the City."

4

20. In the termination meeting, Parker disclosed that he had already discussed Plaintiff's whistleblowing with the company owners and that they agreed with the decision to fire Plaintiff.

21. In terminating Plaintiff's employment, Parker and Defendant's owners acted maliciously, intentionally, fraudulently or recklessly inasmuch as they were aware that it is illegal to terminate an employee's employment because of the employee's protected whistleblowing.

## V.  CAUSE OF ACTION

22. The termination of Plaintiff's employment violated the Tennessee Public Protection Act, Tenn. Code Ann. §50-1-304, in that Plaintiff's termination was solely caused by his refusal to remain silent (whistleblowing) about violations of Pretreatment Standards set forth in the federal Clean Water Act, as well as TDEC regulations, and the Chattanooga City Code.

23. Plaintiff's whistleblowing furthered an important public policy interest inasmuch as the Pretreatment Standards set forth in the federal Clean Water Act, TDEC regulations, and the Chattanooga City Code are designed to reduce the level of toxic pollutants discharged by industry into municipal sewer systems, thereby reducing the amount of pollutants released into the environment. The Tennessee General Assembly has declared that water pollution is a matter of important public policy. *See* Tenn. Code Ann. §69-3-102.

## VI.  DAMAGES

24. As a result of Defendant's unlawful conduct, Plaintiff has suffered both financially (in the form of lost wages) and emotionally (in the form of embarrassment, humiliation, and mental anguish).

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays:

a. That proper process be issued and served upon Defendant, and that Defendant be required to answer within the time prescribed by law;

b. That the Court issue an injunction requiring Defendant to reinstate Plaintiff at his former position or at an equivalent position with all employment rights and benefits to which he would have been entitled but for his discharge, and without harassment or illegal conditions imposed on his job; or, in the alternative, front pay and benefits in lieu of reinstatement;

c. That upon the hearing of this cause Plaintiff be awarded judgment for back pay, including the value of all employment benefits which he has lost from the date of his discharge through the date of trial, as well as prejudgment interest;

d. That Plaintiff be awarded compensatory damages, including damages for humiliation, embarrassment, and mental anguish;

e. That Plaintiff be awarded all reasonable attorney fees and litigation costs;

f. That Plaintiff be awarded punitive damages;

g. That a jury try the issues in this cause; and

h. For any further or additional relief to which the Court deems proper.

**MIKEL & HAMILL PLLC**

By:   s/ *Doug S. Hamill*
      Doug S. Hamill, BPR No. 022825
      Attorney for Plaintiff
      620 Lindsay Street, Suite 200
      Chattanooga, TN 37403
      (423) 541-5400
      dhamill@mhemploymentlaw.com